ROBERT WISNIEWSKI P.C.
40 Wall Street, Suite 2833
New York, New York 10005
(212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ZBIGNIEW ZIELINSKI,                             :
                Plaintiff,                         **Docket No.:**
                                         :
        -against-                          **JURY TRIAL DEMANDED**
                                         :
LINMAR CONSTRUCTION CORP., ADAM
NOWICKI and MICHAEL P. MARANCA,    :

                Defendants.                   :
------------------------------------------------------------X

## COMPLAINT

Plaintiff Zbigniew Zielinski ("Zielinski"), by his attorneys, Robert Wisniewski P.C., as and for his Complaint against Linmar Construction Corp. ("Linmar" or the "Corporate Defendant") as well as Adam Nowicki ("Nowicki") and Michael P. Maranca ("Maranca") (Nowicki and Maranca are collectively referred to as the "Individual Defendants") (Corporate Defendant and Individual Defendants are collectively referred to as "Defendants"), states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action to recover unpaid wages and overtime wages, liquidated damages, interest and reasonable attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*), and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.*

("FLSA"), and Articles 6 and 19 of the New York Labor Law and the various wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("New York Labor Law").

2. Plaintiff further asserts claims against Defendants for breach of contract, retaliatory termination in violation of the FLSA, 29 U.S.C. § 215(a)(3) and NYLL § 215.1(a), and for statutory violations of NYLL § 195.1 and NYLL § 195.3.

3. Defendants provide general contracting services relating to construction business in the New York City area.

4. Plaintiff was employed by Defendants as a "project supervisor" from May 2015 until his termination on December 7, 2019.

5. Defendants failed to compensate Plaintiff for all of the hours he worked either at his regular or premium overtime rate. When Plaintiff complained to Defendants of not being compensated for the hours that he worked in excess of forty (40) per week, Defendants retaliated against him by, among other things, terminating his employment. Finally, Defendants failed to provide Plaintiff with a wage notice and wage statements required by NYLL §§ 195.1 and 195.3.

**PARTIES, JURISDICTION AND VENUE**

6. At all relevant times herein Plaintiff Zielinski, a former employee of the Defendants, was and is a resident of the State of New York, Queens County.

7. At all relevant times, Defendant Limar was and is a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of New York, and having its principal place of business at 34 West 27th Street, New York, New York, 10001.

8. At all relevant times, Defendant Nowicki, an officer, director, or manager of the Corporate Defendant, was and is a resident of the State of New York, Westchester County.

9. At all relevant times, Defendant Maranca, an officer, director, or manager of the Corporate Defendant, was and is a resident of the State of New Jersey, Hunterdon County.

10. Individual Defendants are owners, members, majority shareholders, officers, directors, and/or managers of the Corporate Defendant, and each as one of the ten largest shareholders they are each individually responsible for unpaid wages under the New York Business Corporation Law. See BCL Notices attached here to as **Exhibit 2.**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 in that they are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy.

12. Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendants employ, handle, and sell goods that have been moved in or produced for interstate commerce (including raw ingredients, prepared food items, kitchen tools and appliances, cleaning supplies, and other items), such that Defendants are employers subject to the jurisdiction of the FLSA.

13. This Court has personal jurisdiction over the Corporate Defendant because it is incorporated in the State of New York and has its principal place of business therein.

14. This Court has personal jurisdiction over Individual Defendant Nowicki because he is domiciled in the State of New York and over Individual Defendant Maranca, pursuant to,

3

among other grounds, CPLR 308(a)(1) because he transacts business within the state of New York and/or contracts anywhere to supply goods or services in the state of New York.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to Plaintiff's claims occurred in this district, and one or more Defendants reside therein.

## JURY DEMAND

16. Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

*Facts Relating to Plaintiff's Employment for Defendants*

17. Defendants provide general contracting services relating to healthcare construction in the New York City and Long Island area.

18. In or around the beginning of May 2015, Plaintiff Zielinski entered into an oral contract with Defendant Nowicki whereby Plaintiff agreed to serve as a full-time on-site "project supervisor" for Defendants' construction business.

19. Pursuant to the oral agreement, Plaintiff was to work for Defendants forty (40) hours per week, Monday through Friday, in exchange for a weekly rate of $1,600 per week and ten (10) days of paid vacation per year.

20. Plaintiff was an employee at will and could leave Defendants' employ at any time and be terminated by Defendants at any time.

21. Plaintiff was to perform the following duties on various construction sites where Defendants served as general contractors:

    a. Opening doors to the construction site;

4

    b. Receiving deliveries of work materials;

    c. Checking safety equipment worn by Defendants' subcontractors;

    d. Observing the work carried out by Defendants' subcontractors and reporting progress to Defendants;

    e. Preparing daily reports of the work performed on the construction site;

    f. Performing weekly safety tutorials to subcontractors on the job-site by reading out loud safety manuals provided by Defendants;

    g. Keeping the construction site clean and tidy by sweeping and picking up debris; and

    h. Locking up doors to the construction site after all subcontractors left for the day.

22. Plaintiff performed the above-listed duties at construction sites at hospitals and healthcare facilities such as: Good Samaritan Hospital Medical Center and Saint Francis Hospital Medical in Long Island, Veterans' Hospital and Hospital for Special Surgery in Manhattan; and multiple locations of Saint Vincent's Hospital, among others.

23. In addition to performing the above-listed duties, Plaintiff, at Defendants' behest, also performed work as a laborer. Plaintiff estimates that he performed approximately two (2) to three (3) weeks of actual construction or construction prep work per year on Defendants' various construction projects.

24. For example, in 2019, Plaintiff spent eight (8) full days preparing a construction site at the Good Samaritan Hospital Medical Center for plumber and electrician subcontractors by taking down ceilings and breaking down walls, and two (2) to three (3) days performing

demolition work at the Saint Francis Hospital Medical Center. In 2018, Plaintiff spent one (1) full day moving furniture and preparing an area to be painted at the Veterans' Hospital, and two (2) days assisting electrician subcontractors at the Hospital for Special Surgery. That year, Plaintiff also spent two (2) weeks treating lab benches with chemical-resistant laminate at a large Mount Sinai Hospital. Plaintiff likewise performed work of a laborer on numerous other projects within the Mount Sinai Health System during 2015, 2016, and 2017.

25. Despite Plaintiff's lofty job title of a "project supervisor," Plaintiff's work was ministerial and/or manual in nature and did not require creative skill or advanced knowledge in any field of science or learning acquired from extended specialized education.

26. Plaintiff's work duties neither required Plaintiff to exercise any discretion or independent judgment as to any important business matters nor to implement any legal compliance measures.

27. Plaintiff did not manage, evaluate, or discipline other employees, set their schedules, determine their pay, or possess the power to hire or fire them and Plaintiff did not direct the work of any person, make recommendations as to the hiring, firing, advancement, or promotion of other persons, appraise the productivity of other persons for the purpose of recommending promotions or other changes in employee status, handle employee complaints or grievances, or plan or apportion employees' work.

28. Indeed, Plaintiff's English language skills are rudimentary such that Plaintiff requires a translator to carry out his day-to-day affairs.

29. At best, Plaintiff served as Defendants' glorified construction site watchman and errand boy. Plaintiff presented to work every day with his own toolbox and helped out around

6

the construction site throughout his workday. Plaintiff did not have an office or a desk and spent his entire shift working on his feet.

*Facts Relating to Defendants' Wage an Hour Violations and Retaliatory Discharge of the Plaintiff*

30. Despite the parties' oral agreement that Plaintiff would work Monday to Friday for forty (40) hours per week, approximately two (2) weeks into Plaintiff's employment, Defendants ordered him to start coming to work on most Saturdays and/or to work longer than eight (8) hours per day.

31. As a result, from almost the inception of his employment in May 2015 until his termination on December 7, 2019, Plaintiff worked for Defendants more than forty (40) hours per week during almost every week. Plaintiff estimates that from May 2015 through December 2018, on average, Plaintiff worked approximately sixty (60) to sixty-five (65) hours per week. From January 2019 to December 7, 2019, Plaintiff estimates that, on average, he worked fifty (50) to fifty-five (55) hours per week.

32. Although Plaintiff was paid a weekly rather than hourly wage, the nature of his work duties indicates that he was not exempt from the wage and overtime requirements of the FLSA and the New York Labor Law. Despite his lofty title, Plaintiff's work was ministerial and/or manual in nature.

33. Accordingly, under the FLSA and NYLL, Plaintiff was a non-exempt employee entitled to minimum wage and premium overtime pay of one-and-a-half times his regular rate for the hours worked in excess of forty (40) per week. Despite working well over forty (40) hours per week throughout his employment with Defendants, Plaintiff never received any

compensation for the hours he worked beyond forty (40) either at his regular rate or at the overtime premium rate.

34. Plaintiff frequently complained to Defendants about not being paid for all the hours he worked. Specifically, in 2017, Plaintiff met with Defendant Nowicki and two weeks later, with Defendant Maranca, and requested a raise based on all the additional hours he was made to work for Defendants. Defendants simply ignored Plaintiff's request.

35. In September 2018, and again, on February 2019, Plaintiff approached Defendant Nowicki and requested to be compensated for the hours he worked in excess of forty (40) per week. On both occasions, Nowicki replied to Plaintiff that he was "ineligible for overtime" but did not explain to him why. Nowicki appeared visibly irritated by Plaintiff's requests.

36. In July of 2019, along with his paycheck, Plaintiff received a letter in his native language, Polish, signed by Nowicki stating that any eligibility to overtime is subject to prior agreement with Nowicki.

37. In September 2019, Plaintiff approached Nowicki the fourth and final time to discuss Defendants' failure to pay him for the additional hours he worked. Nowicki became visibly unnerved and told Plaintiff that "if [he] doesn't like it, he can leave."

38. From that moment forward, Defendants' and especially Nowicki's attitude toward Plaintiff changed. Nowicki began to publicly question Plaintiff's competence as employee and regularly demean him in front of Defendants' subcontractors. Nowicki also sent angry and accusatory emails to Plaintiff.

39. Finally, on December 7, one day before Plaintiff was to start his ten (10)-day vacation, Nowicki terminated Plaintiff from his employment alleging that business was slow and Defendants had no work for Plaintiff.

40. Upon information and belief, Plaintiff was the only employee selected by Defendants for termination in retaliation for his complaints about their improper practices of compensating employees.

41. After Plaintiff's termination, Defendants refused to pay Plaintiff the ten (10) days' worth of vacation pay even though Plaintiff had made a proper vacation request months earlier and had mailed to Defendants his timesheets for that period.

*Facts Relating to Defendants' Violations of NYLL §§195.1 and 195.3*

42. In addition to their wage and hour violations, Defendants also failed to provide Plaintiff with the required wage notice and wage statements.

43. NYLL §195.1 mandates that as of 2015 every employer must present a wage notice specifying, among others, regular pay rate and overtime rate, to an employee at the time of hire and when the wage rate changes.

44. Throughout Plaintiff's employment, Defendants never presented Plaintiff with a wage notice in accordance with NYLL §195.1, whether at the beginning of her employment, or any time thereafter.

45. Further, NYLL §195.3 and Wage Order §142-3.8 call for the employer to furnish to each employee a statement with every payment of wages, listing hours worked, rates paid, and other information set forth in the statute and the wage order.

9

46. Defendants never furnished Plaintiff with accurate paystubs in direct violation of NYLL §195.3.

*Defendants' Failure to Pay Proper Wages was Willful*

47. Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of forty (40) per week, and making, keeping, and preserving proper payroll records.

48. Defendants were aware of their requirement to pay Plaintiff the overtime premium of one-and-a-half times his regular rate for each hour worked in excess of forty (40) per week.

49. Nevertheless, Defendants failed to pay Plaintiff his proper wage rates, including overtime wages.

50. Defendants further willfully disregarded and purposefully evaded record keeping requirements of the FLSA and New York Labor Law by failing to maintain proper payroll records by not issuing to Plaintiff checks listing his hours worked or his pay rate.

51. As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

52. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

*Facts Relating to the Defendants' Status as Joint Employers*

53. At all relevant times herein, Corporate Defendant was and is controlled by the Individual Defendants.

54. At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendant.

55. At all relevant times herein, the Defendants Nowicki and Maranca acted for and on behalf of the Corporate Defendant, with the power and authority vested in him as an officer, agent, and employee of the Corporate Defendant, and acted in the course and scope of his duty and function as agent, officer and employee of the Corporate Defendants.

56. At all relevant times herein, Nowicki directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff.

57. At all relevant times herein, Maranca directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff.

58. Corporate Defendant was Plaintiff's employer because Plaintiff was paid by it and it was benefitted by Plaintiff's work.

59. The Individual Defendants had control over the conditions of employment of Plaintiff, including his hiring and firing, his work schedule, the rate and method of payment of his wages, and the maintenance of his employment records.

60. At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendant.

61. As a matter of economic reality, all Defendants are joint employers of Plaintiff; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## FIRST CLAIM FOR RELIEF
### (FLSA Against All Defendants)

62. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

63. Plaintiff is person covered by, and/or intended to benefit from, the provisions of the FLSA with respect to his work for Defendants.

64. Pursuant to the FLSA, Plaintiff was entitled to certain regular and overtime wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

65. Plaintiff regularly worked in excess of forty (40) hours per week for Defendants, but he did not receive the proper regular or overtime wages to which he was entitled for all hours worked.

66. Accordingly, Plaintiff seeks a judgment for unpaid wages and overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to Plaintiff, along with an award of liquidated damages, interest, and attorneys' fees and costs, as provided for by the FLSA.

## SECOND CLAIM FOR RELIEF
### (Unpaid Wages and Overtime Wages in Violation of NYLL)

67. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

68. Plaintiff is person covered by, and/or intended to benefit from, the provisions of the New York Labor Law with respect to his work for Defendants.

69. Pursuant to the New York Labor Law, Plaintiff was entitled to certain regular and overtime wages, which Defendants intentionally and willfully failed to pay in violation of such laws.

70. Plaintiff regularly worked in excess of forty (40) hours per week for Defendants but did not receive the proper wages and overtime wages to which he was entitled for all hours worked.

71. Accordingly, Plaintiff seeks a judgment for unpaid minimum and overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to Plaintiff, along with an award of liquidated damages, interest, and attorneys' fees and costs, as provided for by the New York Labor Law.

## THIRD CLAIM FOR RELIEF
### (NYLL § 195.3 Wage Statement Violation)

72. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

73. Pursuant to New York Labor Law 195.3 and the Wage Order §142-3.8, employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information "the dates of work covered by that payment of wages; name of employee; address and phone number of employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

74. In violation of the NYLL, Defendants did not furnish Plaintiff with wage statements that show the employee's rate or rates of pay, the number of hours worked, or record the proper pay rate for Plaintiff's overtime hours.

75. Accordingly, Plaintiff seeks damages allowed by the statute for himself and situated as well as attorney fees, costs and disbursements.

## FOURTH CLAIM FOR RELIEF
### (NYLL § 195.1 Wage Notice Violation)

76. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

77. New York Labor Law § 195.1 mandates as of January 2011 that at various statutorily-delineated events each employee employed by Defendants receive for signature a Wage Notice, which has to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

78. Plaintiff never received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

79. Accordingly, Plaintiff seeks damages allowed by the statute as well as attorney fees, costs and disbursements.

## FIFTH CLAIM FOR RELIEF
### (FLSA Retaliation Against All Defendants)

80. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

81. Plaintiff is a person covered by and intended to benefit from the provisions of the FLSA.

82. On numerous occasions during his employment, Plaintiff complained to Defendants about the manner in which he was paid and about his unpaid overtime wages in violation of the FLSA.

83. Defendants ignored Plaintiff's complaints, and continued to refuse to pay for every hour he worked in excess of forty (40) at the overtime premium rate.

84. After Plaintiff's latest complaint, Defendants fired Plaintiff under the pretext that Defendants' business was slow and they did not have work for Plaintiff. In truth, Plaintiff was fired in retaliation for his wage complaints.

85. In committing such retaliatory acts, Defendants violated Section 215(a)(3) of the FLSA, which prohibits the discharge of any employee for complaining about a FLSA violation.

86. Wherefore, Plaintiff seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
### (NYLL Retaliation Against All Defendants)

87. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

88. Plaintiff is a person covered by and intended to benefit from the provisions of the NYLL.

89. On numerous occasions during his employment, Plaintiff complained to Defendants about the manner in which he was paid and about his unpaid overtime wages in violation of the NYLL.

90. Defendants ignored Plaintiff's complaints, and continued to refuse to pay him for every hour he worked in excess of forty (40) hours at the overtime premium rate.

91. After Plaintiff's latest complaint, Defendants fired Plaintiff under the pretext that Defendants' business was slow and they did not have work for Plaintiff. In truth, Plaintiff was fired in retaliation for his wage complaints.

92. In committing such retaliatory acts, Defendants violated Section 215 of the NYLL, which prohibits the discharge of any employee for complaining about a NYLL violation.

93. Wherefore, Plaintiff seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

### SEVENTH CLAIM FOR RELIEF
### (Breach of Contract against the Corporate Defendant)

94. Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

95. Plaintiff agreed to perform work and services as a construction site "supervisor" for Defendants.

96. Plaintiff satisfactorily supplied labor in connection with, and in furtherance of, the work required under his employment contract with the Corporate Defendant, and in doing so, complied with the terms of their employment agreements with the Corporate Defendant and was therefore entitled to wages he rightfully earned while working for Corporate Defendant.

97. Defendants failed or refused to pay Plaintiff the wages to which he was entitled under his employment agreement with the Corporate Defendant.

98. The Corporate Defendant's failure or refusal to pay Plaintiff the wages to which he was entitled under his employment agreements with the Corporate Defendant constitutes a breach of the employment agreement with Plaintiff and the Corporate Defendant.

99. That by virtue of the foregoing breach of contract by the Corporate Defendant, Plaintiff has been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs should have been paid as contemplated by their employment agreements with the Corporate Defendants, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against Defendants as follows:

a. Compensatory damages for in an amount to be determined at trial;

b. Liquidated damages pursuant to the FLSA and NYLL;

c. Pre-judgment interest; and

d. Plaintiff's costs, disbursements and reasonable attorney's fees;

Together with such other and further relief that the Court deems just.

Dated: New York, NY
September 22, 2020

ROBERT WISNIEWSKI P.C.

By: */s/ Robert Wisniewski*
Robert Wisniewski
40 Wall Street, Suite 2833
New York, New York 10005
Tel.: (212) 267-2101
*Attorneys for Plaintiff*